IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION

ELECTRONICALLY FILED
Jun 15 2016
U.S. DISTRICT COURT
Northern District of WV

PATRICK TURNES and CYNTHIA TURNES,
his wife,

        Plaintiffs,

v.

FOREMOST INDUSTRIES, INC., a foreign
corporation,

        Defendant.

Civil Action No.   3:16-CV-81 (Groh)

JURY TRIAL DEMANDED

## COMPLAINT

AND NOW come the Plaintiffs, Patrick Turnes and Cynthia Turnes, his wife, by their undersigned attorneys, Stephen M. Houghton, Esquire, and Dickie, McCamey & Chilcote, L.C., and file this Complaint:

### JURISDICTION AND VENUE

1. Plaintiffs, Patrick Turnes and Cynthia Turnes, residents of the State of Maryland, currently reside at 1906 Andrea Court, Finksburg, Carroll County, Maryland.

2. Foremost Industries, Inc. ("Foremost") is a Pennsylvania corporation with its principal place of business located at 2371 Buchanan Trail West, Greencastle, Franklin County, Pennsylvania 17225.

3. Foremost manufactures and sells modular homes to customers in West Virginia and delivers and builds modular homes in West Virginia.

4. Foremost targets potential customers in West Virginia for its sales of modular homes and posts personal reviews of Foremost's West Virginia customers on its website.

5. Foremost states, on its website, that Foremost has been a construction leader in West Virginia for more than 55 years.

6. Foremost, as a condition and term of its standard contract for sale of modular homes, states: "Foremost Industries, Inc., designs and builds in accordance to State Model Codes and Industrialized Housing Regulations for . . . West Virginia." Foremost included this term in Paragraph 13 of its Sales Agreement with the Plaintiffs.

7. On September 26, 2015, Plaintiffs and Defendant entered into a Sales Agreement for the purchase, delivery, and construction of a modular home to be built at Lot 26, Capon View, Noland Ridge Road, Slanesville, Hampshire County, West Virginia 25444. A true and correct copy of the Sales Agreement ("Agreement") is attached as Exhibit 1.

8. The events giving rise to the causes of action stated herein occurred in Slanesville, Hampshire County, West Virginia.

9. There is complete diversity of citizenship between the Plaintiffs and the Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has original jurisdiction under 28 U.S.C. § 1332(a) based on diversity of citizenship and venue in the United States District Court for the Northern District of West Virginia is proper.

### FOREMOST'S LACK OF PERFORMANCE AND ABANDONMENT OF THE PROJECT

11. The averments of Paragraphs 1 through 10 of the within Complaint are incorporated by reference as if the same were set forth at length in their entirety.

12. The Agreement provided a delivery date of December 10, 2015, in order to allow for Foremost to complete the construction of the modular home within 30 days of delivery.

13. The roofing materials, however, were not delivered until January 11, 2016, and siding and windows were delivered January 12, 2016.

14. Foremost subcontracted with Corey Construction of Hagerstown, Maryland for installation and erection of the modular home.

15. By December 30, 2015, Corey Construction's crew had only worked two and one-half days.

16. Roof sheathing was only partially completed on January 11, 2016, and there were several gaps and openings in the roof.

17. By January 15, 2016, substantial warping of the hardwood floor in the interior of the home had occurred as a result of Foremost's failure to close the modular home and protect the interior of the home from the weather.

18. On February 18, 2016, Plaintiffs requested Foremost to provide a plan for completion of the delivery, installation and construction of all of the components of the modular home pursuant to the Agreement. Foremost did not respond.

19. By March 1, 2016, Plaintiffs recognized that Foremost had delivered and installed roofing shingles that were not specified by the Agreement and that the shingles were not similar in quality or appearance to the GAF Timberline HD 50-year shingles specified in the Agreement.

20. Plaintiffs requested Foremost to remove the non-specified shingles from the roof and replace the shingles with the shingles specified in this Agreement.

21. Foremost has not responded to Plaintiffs request to replace the non-specified shingles with shingles as specified in the Agreement.

22. On March 3, 2016, Corey Construction appeared on the job site for the last time.

23. On March 19, 2016, Jim Rockwell, a Foremost employee, promised to provide a crew to begin repairs of the damaged floor and repairs to the foyer staircase. Some of the damaged flooring was removed but no further work was done.

24. On March 31, 2016, Mr. Rockwell promised to inspect the plumbing connections in order to ensure that there were no leaks in Foremost's plumbing. The pressure test is a standard requirement in the modular home industry. Mr. Rockwell did not deliver on his promise.

25. As a result of Foremost's failure to repairs its deficient work, Plaintiffs contracted with a plumbing contractor to run a pressure test, and during the test, the contractor identified and repaired the leaks. All of this corrective work was undertaken to repair the faulty workmanship of Foremost's contractor and the Turnes paid $6,111.84.

26. On April 7, 2016, the Plaintiffs notified Foremost that its lack of performance amounted to an abandonment of the project, and due to Foremost's lack of performance, the Turnes would retain the services of a contractor to repair and/or otherwise undo the damage caused by Foremost, complete the project, and thereafter demand payment from Foremost.

27. The Turnes paid $11,000 to complete the porch structure when Foremost refused to complete the work and $10,000 for the purchase and installation of ductwork and have incurred $572.40 for septic services. Plaintiffs have provided Foremost with the

invoices and cancelled checks for the work that has been performed, expenses incurred, and estimate for work to be performed, all of which are related to Foremost's failure to perform its obligations.

28. On April 8, 2016, Mr. Rockwell promised to provide a "firm schedule on the remaining work." A schedule was neither sent nor received.

29. On April 14, 2016, Plaintiffs sent an e-mail to Mr. Rockwell requesting resumption of work on site. No response was received.

30. On April 18, 2016, Stacy Ingram, a Foremost employee, stated that he was checking on the status of the damaged hardwood floor. No further action was taken.

31. On May 6, 2016, Plaintiffs sent correspondence to Mr. Ingram requesting a plan and schedule for completion of work. No response was made.

32. On May 13, 2016, Plaintiffs requested a plan of completion in correspondence to Mr. Rockwell, Mr. Ingram and Jim Weaver. No response was received.

33. The Agreement provides for roofing, siding and finishing work to be completed within two to three weeks of delivery, and accordingly, the work should have been completed by January 31, 2016, taking into account the late delivery of the materials.

34. Despite Plaintiffs' numerous requests to Foremost to honor the terms of the Agreement and complete the project up to and including June 1, 2016, Foremost has made no offer to complete the work and/or cure the deficiencies of its contractors.

35. Foremost has abandoned the project.

36. In order to prevent further deterioration of the unfinished modular home, Plaintiffs have engaged contractors to complete the work and cure all deficiencies caused by Foremost's lack of performance under the terms of the Agreement.

37. The estimate for work that will be performed as a result of Foremost's abandonment of the project is $67,033.97. See Exhibit 2.

## COUNT I

## BREACH OF CONTRACT

38. The averments of Paragraphs 1 through 37 are incorporated by reference as if the same were set forth at length in their entirety.

39. The Sales Agreement is a valid, enforceable contract.

40. Plaintiffs have performed under the Agreement.

41. Defendant has breached or violated its duties and obligations under the Agreement by:

    a) Failing to provide the materials specified;

    b) Failing to deliver the component parts within the time specified in the Agreement;

    c) Failing to engage competent contractors to perform the construction work as required;

    d) Failing to perform the construction work as provided;

    e) Failing to inspect the work as required; and

    f) Abandoning the project upon receipt of payment by Plaintiffs.

42. Plaintiffs have been injured as a result of Defendant's breach or violation of its duties and sustained damages in the amount of $94,718.21 plus interest and costs.

## COUNT II

## BREACH OF EXPRESS WARRANTIES

43. The averments of Paragraphs 1 through 42 are incorporated by reference as if the same were set forth at length in their entirety.

44. W. Va. Code § 46-2-313 provides that express warranties by the seller are created, in relevant part, by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain..." W. Va. Code § 46-2-313(1)(a).

45. Foremost, by abandoning the project and in violation of its agreement to build a modular home according to the specifications in the Agreement, is in breach of its express warranties:

    (a) Foremost's "one-year parts and labor plus equipment warranties;"

    (b) Foremost's ten-year warranty to provide a "drywall ready" modular home;

    (c) Foremost's ten-year RWC (Residential Warranty Corporation) structural warranty; and

    (d) One-year service warranty for on-site completion.

46. Plaintiffs mitigated their damages by undertaking completion of the project.

47. As a result of Defendant's breach of its express warranties, Plaintiffs have sustained damages.

WHEREFORE, Plaintiffs demand judgment in the amount of $94,718.21 plus interest and costs.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

48. The averments of Paragraphs 1 through 47 are incorporated by reference as if the same were set forth at length in their entirety.

49. Foremost is a manufacturer of modular homes and sold and warranted modular homes, including Plaintiffs' modular home.

50. Defendant breached the implied warranty of merchantability contained in W. Va. Code § 46-2-314. A warranty of merchantability is implied, unless excluded or modified, in every contract for sale "if the seller is a merchant with respect to goods of that kind." W. Va. Code § 46-2-314(1).

51. Foremost is not permitted to "exclude, modify, or otherwise attempt to limit" a warranty of merchantability. W. Va. Code § 46A-6-107.

52. The Plaintiffs' modular home was not fit for occupancy because the Defendant did not complete the work, as required, and abandoned the project.

53. The modular home, as delivered, installed, built and constructed by the Defendant, does not pass without objection, in the normal and regular sales of modular homes under the Agreement.

54. The component parts of the modular home are not of fair average quality within the description of those materials as set forth in the Agreement, and in fact, Foremost provided substandard materials and materials of lesser quality than those specified in the Agreement.

55. As a result, Plaintiffs have undertaken to complete the project, including the purchase of materials, delivery of materials to the job site, installation and construction of the modular home and have sustained damages.

WHEREFORE, Plaintiffs demand judgment in the amount of $94,718.21 plus interest and costs.

JURY TRIAL DEMANDED.

DICKIE, McCAMEY & CHILCOTE, L.C.

By: /s/ Stephen M. Houghton
Stephen M. Houghton, Esquire
WV I.D. # 6412

2001 Main Street, Suite 501
Wheeling, WV 26003-2854
304-233-1022
Counsel for Plaintiffs,
Patrick Turnes and Cynthia Turnes

4511914.1